## AUSTIN v. DUTCHER.

(Supreme Court, Appellate Division, First Department. December 31, 1900.)

ASSOCIATION—EXPULSION OF MEMBERS—REINSTATEMENT.

The constitution of a voluntary association authorized the expulsion of members for disgraceful conduct, and required that charges be made in writing and referred to a committee, which should furnish accused with a copy thereof, and notify him to appear for trial. A member of the association was charged in writing with theft, and a committee appointed, which served a copy of the charge on accused, and notified him that the committee would present its findings at a certain time, and requested him to be present. The committee reported against accused at such meeting, and the charges were presented, and oral and written statements of facts were made; and the accused then requested, orally and in writing, that he be given a copy of the charge and a bill of particulars, and asked for time to make a defense, but he did not deny knowledge of the charge or assert his innocence. His requests were refused, and he was expelled. *Held*, that his expulsion was according to the constitution of the association, and not subject to review by the courts.

Appeal from special term, New York county.

Action by Frank Austin against Enos V. Dutcher, as chief engineer or president of New York City Division, No. 105, of the Grand International Brotherhood of Locomotive Engineers, for the reinstatement of plaintiff as a member of such association. From a judgment dismissing the complaint, plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

Thomas P. Wickes, for appellant.
James C. Foley, for respondent.

INGRAHAM, J. This action was brought against the defendant, as chief engineer or president of the New York City Division, No. 105, of the Grand International Brotherhood of Locomotive Engineers, a voluntary, unincorporated association, for the reinstatement of the plaintiff as a member of the association. At the end of the plaintiff's case the complaint was dismissed; the court filing a decision stating as the grounds of the dismissal that the plaintiff had not exhausted the remedies provided for by the constitution and by-laws of the association of which he was a member, by an appeal to the Grand International Brotherhood of Locomotive Engineers' Convention, which seems to have been a convention of associations similar to the association of which the defendant was the chief officer. As the complaint was dismissed at the close of the plaintiff's case, if upon any ground the plaintiff was entitled, upon the facts proved, to any relief, the dismissal was error; but if, upon the facts, the plaintiff must fail in obtaining any relief in this action, then the judgment should be affirmed, although the reasons given for the dismissal be not approved.

It seems that the plaintiff had been a member of this association for several years, until December 3, 1898, when he was expelled at a regular meeting of the association. This association was governed by a constitution and by-laws. By article 5, § 1, of such constitution, it is provided:

"Should it become known to any member of this brotherhood that a member thereof has been guilty of any unbecoming or disgraceful conduct, or of drunkenness, or of having in any way violated any law, rule, or regulation of the order, it shall be his duty at once to bring charges in writing against such member before the subdivision to which said offending member belongs."

In pursuance of this provision, one M. F. Rhodes, who was a member of the association, presented to it, at a meeting held on that day, a charge against the plaintiff, in writing. The plaintiff was present at this meeting. This charge was as follows:

"I prefer charges against Bro. Frank Austin, of this division, for dishonesty and conduct unbecoming a member of this brotherhood. I charge him with taking property that belonged to the Manhattan Railway Company of the City of New York, and appropriating it to his own use, and selling the same to others, thereby causing a loss to said Railway Co. and bringing disgrace on this division of Locomotive Engineers."

This charge would seem to come within the provision of the constitution before cited, and, if proved, would certainly be unbecoming and disgraceful conduct. By section 2, art. 5, of the constitution it is provided that:

"The C. E. of the subdivision in which said charges are preferred shall, at the first meeting possible, bring them to the notice of the members present, and appoint a committee of three to investigate."

At this meeting of November 5th these charges were presented to the members present, and a committee to investigate was appointed. On December 1, 1898, a copy of these charges was served upon the plaintiff, with a notice from the committee that they would present their findings at the next regular meeting of the association, to be held on Saturday evening, December 3d, and the plaintiff was notified to be present and present his side of the case. On December 3, 1898, a meeting was held, at which the plaintiff was present, and at this meeting the committee reported on the charges against the plaintiff. The charge was read, and a written statement of Rhodes, who made the charge, was also read. There was also a statement of one McFarlan, who was also a member of the association. Both Rhodes and McFarlan were present, and the presiding officer asked Rhodes if he had anything further to add to his written statement, to which Rhodes replied that he had not, but subsequently he made some further statement to the members present. There was then some discussion about the report of the committee, which appears to have been against the plaintiff, finding him guilty of the charge, when the presiding officer asked the plaintiff if he had anything to say. The plaintiff then made a request that he be granted a copy of the charges or specifications, or bill of particulars, specifying what the charges were, and time to prepare a defense. He then made a written protest, which stated that it was necessary that he should have some information on or about the case, to defend himself, but no statement appears to have been made that he had no knowledge of what the charge was; and to this protest and oral request for time no response was made by the presiding officer or any member at the meeting. After this the matter seems to have been discussed. The plaintiff, however, made no further statement in answer to the charge,—not even denying it,

—whereupon a vote was taken, which stood 18 to 5 against the plaintiff. The plaintiff subsequently introduced in evidence the minutes of the meeting, from which it appears that a vote was taken as to what penalty should be inflicted. Twenty-four members of the association voted for expulsion and 14 against it, and the chief engineer declared the plaintiff expelled.

By section 3 of article 5 of the constitution it is provided that:

"Should the committee find any evidence against the accused, he shall be furnished by the chairman of the committee with a copy of the charges made against him, and notified when to appear for trial, at which trial the said committee shall produce the evidence against him, and the evidence in his defense shall be heard, after which a vote of the members present shall be taken as to his guilt or innocence, and a majority vote shall be necessary to declare him guilty. If found guilty the ballot shall be passed, and a majority vote of all members present shall be sufficient to expel, suspend, reprimand, or to censure him."

It is not disputed but that the rule in regard to voluntary associations of this character is that the constitution and by-laws are the sole rule that governs the relations between the association and its members, and that the courts cannot redress any action of the association in expelling or punishing a member, when such action has been taken in accordance with the express provisions of the constitution and by-laws. As was said in White v. Brownell, 2 Daly, 359:

"Individuals who form themselves together into a voluntary association for a common object may agree to be governed by such rules as they think proper to adopt, if there is nothing in them in conflict with the law of the land; and those who become members of the body are presumed to know them, to have assented to them, and they are bound by them."

This case has been cited with approval in many cases, and was followed in Lewis v. Wilson, 121 N. Y. 284, 24 N. E. 474, where the court say:

"But whether the committee should decide rightly or wrongly does not change the attitude of the plaintiff as a member of the association, or qualify his obligation to submit to the decision of the agreed tribunal under pain of suspension. All that he could require was that the investigation should be conducted bona fide, upon notice to him and an opportunity to be heard, and that the decision made should be within the scope of the jurisdiction conferred on the committee."

If, therefore, this investigation was conducted bona fide, with notice to the plaintiff which gave him an opportunity to be heard, and the decision was within the scope of the jurisdiction conferred upon the organization by the by-laws, the plaintiff cannot ask a court of equity to reverse the action of the association and restore him to membership. It seems to me that this investigation was exactly in accordance with the provisions of the constitution, that the plaintiff had all the rights there secured to him, and that the organization, in expelling him, acted clearly within the powers conferred or reserved to it by the constitution. Under section 1, art. 5, the charge was made in writing by a member of the association, and brought before the association at a regular meeting, at which the plaintiff was present, and a committee of three was appointed to investigate. The committee found evidence against the accused, and

then, as provided for by section 3 of the constitution, a copy of the charges made against him was served upon him, and he was notified to appear at a meeting of the association for trial at a time named. He duly appeared for trial at the meeting, when the committee, as required by section 3 of the constitution, produced the evidence against the plaintiff. He was then asked if he had anything to say as to the charges, and then, for the first time, he objected to the form of the charges, and requested a copy of the specifications, or a bill of particulars specifying what the charges were, and time to prepare a defense. The constitution gave him no right to such an adjournment or to specifications or a bill of particulars. The charges that were actually made by a member were served upon the plaintiff, and that was all that the constitution required. But, if these charges had not been sufficient, he certainly was required to object to them at the commencement of the proceedings against him on December 3d, and before the committee had presented to the association the evidence against him. Whether or not the charges were sufficiently specific to call for a defense was a question for the association itself to determine. The charge in writing had been made to the association, and by it the plaintiff was charged with taking property that belonged to the Manhattan Railway Company, and appropriating it to his own use, and selling the same to others. This certainly was specific enough to require an answer. The plaintiff had either taken the property, or he had not. If he had denied the charge, so as to raise an issue, a different question would have been presented; but, before he presented his protest against the sufficiency of the charge, the written statement of the person making the charge had been read, together with the statement of McFarlan, and a statement by the committee that they had examined several witnesses, giving the substance of the testimony. These statements specified the property that was taken, and gave the particulars and the date when the property was taken. The plaintiff then had full knowledge of the charge that was made, with all the information that was necessary to enable him either to admit or deny the charge; and the refusal of the association to give him further time, in the absence of any statement that he had any witnesses whom he wished to produce, or anything from which the association could see that the application was made in good faith, was not a violation of any right of the plaintiff which would entitle him to a reversal of the action of the association. But an examination of section 3 of the constitution, to which attention has been called, makes it quite evident that it was not contemplated that these proceedings should be adjourned. The section provides that the committee upon the day fixed for the trial should produce the evidence against the member, and that the evidence in his defense should be heard, after which a vote of the members present should be taken as to his guilt or innocence. This is the constitution of the association of which the plaintiff was a member, and by it he was bound; and if the trial was conducted in accordance with the provisions of this constitution, and he had proper notice of the charges and an opportunity to be heard, he cannot complain. The

plaintiff heard the statement of the members of the association read, accusing him of theft; and, without even a denial of the truth of these charges, he simply protested against the proceeding and desired an adjournment. Certainly a refusal of such a request was not such a violation of the plaintiff's rights as would entitle him to the interference of the court in reversing the action of the association in expelling him. Taking this view of the question, it is not necessary to discuss the grounds upon which the court below placed its decision, as I am satisfied that the plaintiff had a fair trial before the tribunal authorized by the constitution and by-laws to act, that all the provisions of the constitution were fully complied with, and that the plaintiff was not entitled, upon his own evidence, to any relief.

It follows that the judgment appealed from should be affirmed, with costs. All concur.

HATCH, J. I concur in the result of this opinion, upon the ground that the plaintiff, having submitted himself to the jurisdiction of the association, was bound in the first instance to exhaust his remedies by appeal to the higher constituted authorities, before he became entitled to maintain an action for the settlement of his rights. This he did not do, and he has, therefore, no standing to maintain this action.

VAN BRUNT, P. J., concurs.